## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **REBECCA SCHNEIDER, individually and as personal representative of the ESTATE OF ZACHARIAH SCHNEIDER**<br>636 Wild Horse Creek Drive<br>Fairview Heights, Illinois 62208 | **Case No.** |
| *Plaintiff*, | **JURY TRIAL DEMANDED** |
| v. | |
| **NATIONAL RAILROAD PASSENGER CORPORATION a/k/a AMTRAK**<br>60 Massachusetts Avenue<br>Washington, D.C. 20002 | |
| And | |
| **BNSF RAILWAY COMPANY**<br>2650 Lou Menk Drive<br>Fort Worth, TX 76131 | |
| *Defendants.* | |

COMES NOW, Plaintiff, Rebecca Schneider, Individually and as personal representative of the Estate of Zachariah Schneider, by her undersigned counsel, and makes the following Complaint against Defendants, National Railroad Passenger Corporation a/k/a Amtrak ("Amtrak") and BNSF Railway Company ("BNSF"), and alleges as follows:

### INTRODUCTION

1.      At approximately 4:00pm on September 25, 2021, Amtrak Empire Builder Train 7/27 derailed near Joplin, Montana at the East Buelow switch point killing at least three people and injuring dozens more.

2.      Plaintiff, Rebecca Schneider, is one of the victims who survived this crash. However, her husband, Zach Schneider, died as a result of this preventable tragedy.

1

3.      Amtrak Empire Builder Train 7/27, a two locomotive, ten passenger car train, departed from Chicago, Illinois on September 24, 2021.  At the time there were approximately 141 passengers and 14 crew members on board.

4.      Empire Builder Train 7/27 was set to travel from Chicago to Seattle, Washington and Portland, Oregon with numerous stops along the way.

5.      Throughout the entire journey, Empire Builder Train 7/27 was traveling on tracks owned, operated and maintained by Defendant BNSF Railway Company.

6.      When Empire Builder Train 7/27 derailed, the final four cars were violently thrown from the tracks and flipped onto their sides, with the last three becoming completely detached.

7.      At the time of the derailment, Zach was in the viewing car and Rebecca was in the sleeper car, which was the very last car of the train.

8.      When the viewing car derailed and was thrown from the tracks, Zach Schneider sustained excruciating and devastating injuries to his body and head, which ultimately caused his tragic and untimely death.  He was twenty-eight years old.

9.      Zach Schneider is survived by his wife, Plaintiff Rebecca Schneider, as well as his parents.

10.     Rebecca sustained severe and life-altering injuries when the sleeper car derailed and flipped onto its side.  Rebecca has also suffered and will continue to endure unfathomable grief and emotional and psychological injuries resulting from the death of her husband, Zach.

11.     This accident and the death and destruction it caused was entirely preventable. Sadly, the September 25, 2021 derailment of Empire Builder Train 7/27 is but another in a long list of devastating and fatal train derailments caused by the negligence and carelessness of Defendants Amtrak and BNSF.



12.     Investigations led by the National Transportation Safety Board ("NTSB") are currently underway.  The NTSB has confirmed that the entities involved in this tragedy are Amtrak and BNSF, whose conduct is being examined along with extensive on-site examination of the tracks and train cars involved in the accident.  The NTSB is also interviewing Amtrak and BNSF personnel.

13.     The NTSB has confirmed that a BNSF freight train traveled through this section of the railway tracks shortly before the derailment, and that BNSF personnel had last inspected the tracks in the area of the derailment as recently as two days before the accident.

14.     The NTSB anticipates completing a preliminary report of the incident within the next thirty days.

## PARTIES

15.     Plaintiff, Rebecca Schneider ("Plaintiff" or "Rebecca"), is an adult individual and resident of the State of Illinois, residing at 636 Wild Horse Creek Drive, Fairview Heights, Illinois 62208.

16.     Plaintiff brings this lawsuit on behalf of the Estate of Zach Schneider[1], her husband, as well as individually in her own right.

17.     Zach and Rebecca met while attending Southern Illinois University, where Zach was studying computer science and Rebecca was studying medicine, preparing for a career as a Physician's Assistant.

18.     Zach exceled in computer science, earning numerous honors and awards from the Southern Illinois University Elmer W. Engstrom Department of Engineering and Computer Science, and was also a national champion in collegiate parliamentary debate, winning the 2015 National Parliamentary Tournament of Excellence.

19.     After graduation, Zach and Rebecca planted their roots in Fairview Heights, Illinois, where Rebecca began her career as a Physician's Assistant in the field of pain management, and where Zach continued his career as a software developer and engineer for numerous technology companies.

20.     In his free time, Zach volunteered at a grade school in St. Louis, teaching computer coding to children with limited access to computer resources, and coached the debate team at a local university.

---

[1] Zach Schneider was killed in the derailment of Empire Builder Train 7/27 on September 25, 2021. Plaintiff is in the process of obtaining Letters of Administration.

21.    Zach and Rebecca also spent their time rescuing dogs and fostering kittens until they could be placed into loving homes.  Every Sunday, Zach and Rebecca enjoyed watching Zach's beloved Green Bay Packers.

22.    Plaintiff, Rebecca Schneider, was the lawfully wedded wife of Zach Schneider at the time of his death, having been married since November 19, 2016.



23.    Defendant, National Railroad Passenger Corporation a/k/a Amtrak ("Amtrak"), is a corporation organized and existing under the laws of the United States of America with its principal place of business located at 60 Massachusetts Avenue, Washington, D.C. 20002.

24.    At all times relevant hereto, Defendant Amtrak, by and through its railroad interests, has carried out, and continues to carry out, substantial, continuous, and systematic business activities within the state of Illinois, and has purposely established significant contacts within Illinois.

25.     At all times relevant hereto, Defendant Amtrak was acting by and through its employees, servants, agents, workmen, and/or staff, all of whom were acting within the course and scope of their employment, for and on behalf of Defendant Amtrak.

26.     The injuries and damages alleged in this lawsuit arise out of, and are related to, Defendant Amtrak's contacts and activities in the State of Illinois.

27.     Defendant, BNSF Railway Company ("BNSF"), is a corporation or other legal entity existing under the laws of the State of Delaware, with its principal place of business located at 2650 Lou Menk Drive, Fort Worth, Texas 76131.

28.     At all times relevant hereto, Defendant BNSF, by and through its railroad interests, has carried out, and continues to carry out, substantial, continuous, and systematic business activities within the state of Illinois, and has purposely established significant contacts within Illinois.

29.     At all times relevant hereto, Defendant BNSF was acting by and through its employees, servants, agents, workmen, and/or staff, all of whom were acting within the course and scope of their employment, for and on behalf of Defendant BNSF.

30.     The injuries and damages alleged in this lawsuit arise out of, and are related to, Defendant BNSF's contacts and activities in the State of Illinois.

31.     At all times relevant hereto, Defendant Amtrak was the owner, operator, maintainer, possessor, lessor, controller and/or otherwise responsible for the care, control, and safe operation of the locomotive and passenger cars comprising the Empire Builder Train 7/27 involved in the accident.

32.     Upon information and belief, at all times relevant hereto, Defendant BNSF was the owner, operator, maintainer, possessor, lessor, controller and/or otherwise responsible for the care

and control of the train tracks and switch point at and/or around the railway where this accident occurred near Joplin, Montana and on which Empire Builder Train 7/27 was traveling at the time it was caused to derail.

<u>**JURISDICTION AND VENUE**</u>

33.     This Court has specific jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1332(a) as the amount in controversy exceeds the jurisdictional threshold, exclusive of costs, is between citizens of different states, and because the Defendants each have certain minimum contacts with the State of Illinois such that the maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice, and because the injuries and damages alleged herein arise out of, and are related to, Defendants' contacts and activities in the State of Illinois.

34.     Rebecca and Zach purchased their tickets for Empire Builder Train 7/27 from Illinois through Defendant Amtrak's website, which was advertising a "Buy One Get One" deal, thereby entering into a business transaction with Amtrak in Illinois.

35.     Rebecca and Zach boarded Amtrak's Empire Builder train in Chicago, Illinois, relying on Amtrak's assurance that they would be carried safely across the country.

36.     Amtrak and BNSF employed workers and personnel at the train station in Chicago, Illinois to assist passengers boarding the Empire Builder train, including Rebecca and Zach.

37.     Defendant Amtrak's contacts and activities in the State of Illinois, and specifically in Chicago, Illinois, directly gave rise to the injuries and damages suffered by Rebecca and the Estate of Zach Schneider, as alleged herein, as Plaintiff and Zach boarded Empire Building Train 7/27 in Chicago, Illinois and this Court thus has specific personal jurisdiction over Defendant Amtrak in this action.

38.     Defendant BNSF's contacts and activities in the State of Illinois, and specifically in Chicago, Illinois, directly gave rise to the injuries and damages suffered by Plaintiff and the Estate of Zach Schneider, as alleged herein, as Defendant BNSF owns the railroad tracks in Chicago, Illinois on which Empire Builder Train 7/27 began its journey from Chicago's Union Station, and Defendant BNSF also operates the rail service on its railroad tracks in Chicago utilizing its own crews, personnel, and employees and this Court thus has specific personal jurisdiction over Defendant BNSF in this action.

39.     Defendant BNSF's own Network Map confirms that BNSF owns the railroad tracks on which the Empire Builder line operates, originating in Union Station, Chicago:



40.     The website for Metra, the commuter rail system in the Chicago metropolitan area, confirms that, "[t]oday, BNSF Railway still owns the BNSF line, and operates the commuter rail service with its own crews under a purchase-of-service agreement with Metra."

41.     Defendant BNSF's ownership and operation of the railroad lines originating in Chicago's Union Station and on which Empire Builder Train 7/27 operated and began its journey

directly gave rise to the injuries and damages suffered by Plaintiff and the Estate of Zach Schneider, as alleged herein.

42.     Defendants Amtrak and BNSF derived a financial benefit through their ownership and operation of the railroad tracks and railroad cars which carried Empire Builder Train 7/27 and Plaintiff and Zach Schneider.

43.     Amtrak's Empire Builder train runs along rail lines owned, operated, and controlled by BNSF.

44.     Amtrak and BNSF entered into a joint venture whereby Amtrak's Empire Builder train was permitted to operate and run along BNSF's rail lines.

45.     Amtrak and BNSF formed this joint venture with the common purpose of profiting from cross-country rail traffic, including from Rebecca and Zach.

46.     Amtrak and BNSF share in the profits and losses of this joint venture.

47.     Amtrak and BNSF jointly manage and control this joint venture, namely the travel of the Empire Builder train along BNSF's transnational rail line.

48.     Defendants, Amtrak and BNSF, jointly and individually, are subject to personal jurisdiction in Illinois, as Defendants have substantial business contacts with Illinois, their joint venture has substantial business contacts with Illinois, and Plaintiff's claims, in part, arise directly from Defendants' joint venture contacts in Illinois.

49.     There is thus specific personal jurisdiction over Defendants Amtrak and BNSF pursuant to Illinois' long arm statute, 735 ILCS 5/2-209.

50.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1349, as the United States is the owner of more than one-half of Defendant Amtrak's capital stock.

51.     Venue is proper in the United States District Court for the Northern District of Illinois (Eastern Division) pursuant to 28 U.S.C. § 1391(b) as a substantial portion of the acts, omissions, and events giving rise to Plaintiff's claim occurred in and around this district.

### THE CATASTROPHIC DERAILMENT OF EMPIRE BUILDER TRAIN 7/27

52.     On September 24, 2021, Rebecca and Zach boarded Amtrak Empire Builder Train 7/27 in Chicago, Illinois and set out on what was supposed to be a two-day journey across the American Northwest to Portland, Oregon.

53.     Amtrak advertises the journey of the Empire Builder as a "grand adventure" where passengers will "marvel at the majesty of the northern United States as you travel over mountain passes, through alpine valleys and past 7,000-year-old glaciers."

54.     Rebecca and Zach put their lives in Defendants' hands as they set out on their journey.

55.     Upon information and belief, Defendant BNSF owned, managed, maintained, and operated the tracks on which the Empire Builder Train traveled from the inception of its trip in Chicago, Illinois until its planned destination of Portland, Oregon.

56.     On the second day of the trip, on September 25, 2021, at approximately 4:00 p.m., the Empire Builder Train approached the BNSF East Buelow switch point near Joplin, Montana.

57.     Upon information and belief, approximately 80 minutes prior to the Empire Builder Train approaching and traveling through the East Buelow switch point, a BNSF freight train passed through the same area on the same tracks.

58.     Upon information and belief, at the time Empire Builder Train 7/27 derailed it was traveling approximately 75-78 miles per hour around a gradual right-hand curve immediately prior to the East Buelow switch point.

59.     At the time of the derailment, the air temperature in Joplin, Montana was in the mid-eighties, and the subject railroad tracks were approximately 20 to 30 degrees hotter, which is within the range of what should be normally anticipated for railway tracks in this area and for which the railway tracks should be able to withstand without buckling, degrading or becoming damaged in any way.

60.     Track buckling is an occurrence that is known to Defendants Amtrak and BNSF, and Defendants had a duty to ensure that a neutral rail temperature was maintained and to monitor the condition of the rails to ensure that no track buckling occurred and to put in place policies and procedures to ensure that this was accomplished.

61.     Defendants Amtrak and BNSF had an obligation to prevent any trains, including the Empire Builder Train 7/27, from traveling on their tracks unless Defendants could ensure that the tracks were safe.

62.     Shortly before the derailment, Zach left Rebecca in their cabin in the sleeper car so that Rebecca could get some rest, and went to sit in the viewing car.

63.     Unbeknownst to Rebecca, this was the last time she would see Zach alive.

64.     As the train approached and crossed over the BNSF East Buelow switch point, eight of the train's 10 passenger cars suddenly derailed.

65.     Upon information and belief, upon approach to the BNSF East Buelow switch point, the operator of Empire Builder Train 7/27 could have but failed to observe track buckling that had occurred, and further failed to appropriately respond to the apparent track buckling.

66.     The final three passenger cars, including the sleeper car where Plaintiff was located (the very last car), completely decoupled from the rest of the train and were forcefully thrown from

the tracks, flipping and landing on their sides. A fourth car, the viewing car in which Zach was located, did not decouple but was launched from the tracks and flipped onto its side.



67.     When the viewing car derailed and was thrown from the tracks, Zach was violently tossed about inside the car, slamming into the metal seats and structures within the passenger compartment, sustaining excruciating and ultimately fatal injuries.

68.     When the sleeper car derailed and flipped onto its side, Rebecca was thrown about inside the car, sustaining severe injuries as she was forcefully smashed into the interior structures and components of the sleeper car.

69.     When the sleeper car finally came to rest, Rebecca attempted to climb out of the car but quickly came to the terrifying realization that the door was stuck and she was trapped inside.

70.     A crew member present in the cab located a sledgehammer that he was able to use to smash open the door and window which allowed Rebecca to climb out of the flipped car where she was helped down to the ground by other passengers.

71.     After escaping the train car, Rebecca approached the flipped and mangled viewing car where she knew her husband, Zach, was at the time of the derailment.  Plaintiff screamed his name over, and over, but heard nothing.

72.     Rebecca was still frantically calling Zach's name when first responders reached her and informed her that her husband was likely dead. She was then taken away from the scene and rushed to the hospital.

73.     Six hours later, while in the hospital, officials confirmed to Rebecca that her husband, Zach, died in the derailment.

74.     This tragedy and the immense destruction, loss of life, and suffering inflicted on Plaintiff, her husband, and many others, should have never happened.

75.     The investigation of this tragedy is at its early stages, however, upon information and belief, Empire Builder Train 7/27 derailed as a result of a defective and/or poorly maintained railway track and/or switch and/or negligent and improper track maintenance/inspections and/or negligent, grossly negligent, and/or reckless locomotive operation, and/or inadequate, ill-maintained, inoperable and/or malfunctioning Positive Train Control systems on the BNSF tracks and/or Amtrak's train cars.

76.     Furthermore, this tragedy occurred due to the systematic failures of Amtrak to have an adequate culture in place to ensure safety on its railways.

77.     The September 25, 2021 Amtrak Empire Builder Train 7/27 derailment is the latest chapter in Amtrak's long history of tragic train accidents and culture of disregard for the safety and lives of its passengers.

78.     On May 12, 2015, Amtrak Train 188 derailed near Philadelphia, Pennsylvania, killing eight passengers and injuring over 200.



79.     On March 14, 2016, the Amtrak Southwest Chief train derailed near Cimarron, Kansas, injuring 28 passengers.



80.     On April 3, 2016, Amtrak Train 89, known as the Palmetto, struck a backhoe and derailed just south of Philadelphia, Pennsylvania, killing two.



81.     On December 18, 2017, the Amtrak Cascades Train 501 derailed near DuPont, Washington, killing three and injuring 65 passengers.



82.     On February 4, 2018, Amtrak Regional Rail Train 91 train failed to properly navigate a railroad switch near Cayce, South Carolina and collided with a freight train, killing two and injuring scores of passengers.



83.     Even this same portion of track in Montana had previously been subject to tragedy when on August 5, 1988, an Amtrak Empire Builder train making the same Chicago-to-Seattle/Portland trip derailed and seven of its cars overturned approximately 115 miles east of Havre, Montana, injuring over 100 passengers.  The 1988 Empire Builder train derailed on the portion of track due to track buckling, and Defendants had a responsibility to ensure that such a derailment never happened again by putting policies and procedures in place to address and prevent a reoccurrence of the track buckling that caused the 1988 derailment.

84.     Tragically, Amtrak has failed to learn from these prior deadly accidents and has continuously failed to ensure that its trains are operated safely and continues to put passengers at risk of catastrophic injury and death each time they board an Amtrak train.

85.     Amtrak and BNSF owed the highest duty of care to the passengers aboard Empire Builder Train 7/27, including Rebecca and Zach Schneider, to ensure that the train is operated properly and safely and that all tracks, equipment, and switches are properly and safely maintained, inspected, and repaired and in good and safe working condition.

86.     Defendants Amtrak and BNSF failed to fulfill their aforementioned duties and caused the deadly derailment of Amtrak Empire Builder Train 7/27 on September 25, 2021.

87.     During the derailment of Empire Builder Train 7/27, Zach Schneider was horrifically maimed and killed and Rebecca was severely injured.

88.     As a direct and proximate result of Defendants, Amtrak's and BNSF's carelessness, negligence, gross negligence, recklessness and other liability-producing conduct, Zach Schneider suffered serious, severe, and disabling injuries including, but not limited to his death resulting from excruciating impact trauma; mental and emotional pain and suffering and fear of impending death; unbearable and unimaginable physical pain and suffering; a permanent loss of enjoyment of life and a permanent loss of life's pleasures; loss of earnings and earning capacity and he has been permanently prevented from performing all of his usual duties, occupations, recreational activities and avocations, all to his and his beneficiaries' loss and detriment.

89.     As a direct and proximate result of Defendants, Amtrak's and BNSF's carelessness, negligence, gross negligence, recklessness and other liability-producing conduct, which resulted in the death of Zach Schneider, his beneficiaries have in the past and will in the future continue to suffer great pecuniary loss, including but not limited to, loss of financial and emotional support, loss of aid, loss of services, loss of companionship, loss of consortium and comfort, loss of counseling and loss of guidance and tutelage.

90.     As a direct and proximate result of Defendants, Amtrak's and BNSF's carelessness, negligence, gross negligence, recklessness and other liability-producing conduct, which resulted in the death of Zach Schneider, his beneficiaries have suffered damages due to mental pain, anguish, grief, and the loss of future support and services.

91.     As a direct and proximate result of Defendants, Amtrak's and BNSF's carelessness, negligence, gross negligence, recklessness and other liability-producing conduct, decedent Zach Schneider's beneficiaries have incurred or have been caused to incur and pay large and various

expenses for various funeral, burial and estate administration expenses for which Plaintiff is entitled to compensation.

92.     As a direct and proximate result of Defendants, Amtrak's and BNSF's carelessness, negligence, gross negligence, recklessness and other liability-producing conduct, Plaintiff claims all damages suffered by the Estate of Zach Schneider by reason of his death, including, without limiting the generality thereof, the following: the severe injuries to Zach, which resulted in his death; the anxiety, horror, fear of impending death, mental disturbance, pain, suffering and other intangible losses which Zach suffered prior to his death; the loss of future earning capacity suffered by Zach from the date of his death until the time in the future that he would have lived had he not died as a result of the injuries he sustained; and the loss and total limitation and deprivation of his normal activities, pursuits and pleasures from the date of his death until such time in the future as he would have lived had he not died as a result of the injuries sustained by reason of the carelessness, negligence, gross negligence, recklessness and other liability-producing conduct of Defendants Amtrak and/or BNSF.

93.     As a direct and proximate result of Defendants, Amtrak's and BNSF's carelessness, negligence, gross negligence, recklessness and other liability-producing conduct, Plaintiff has been forced to suffer profound grief and emotional and psychological injuries as a result of the death of her husband, Zach Schneider.

94.     As a direct and proximate result of Defendants, Amtrak's and BNSF's carelessness, negligence, gross negligence, recklessness and other liability-producing conduct, Plaintiff, Rebecca Schneider, suffered serious, severe and disabling injuries including but not limited to, neurologic injuries including but not limited to a concussion and post-concussive syndrome, sprains and strains, abrasions, contusions, and other orthopedic, neurological, and psychological

injuries, the full extent of which has yet to be determined. Plaintiff has in the past and may in the future require medicines, medical care and treatment; she has in the past and may in the future continue to be compelled to expend monies and incur further obligations for such medical care and treatment; she has in the past and may in the future continue to suffer agonizing aches, pains and mental anguish; she has in the past and may in the future continue to be disabled from performing her usual duties, occupations and avocations, all to her great loss and detriment.

      a.     As a direct and proximate result of Defendants, Amtrak's and BNSF's carelessness, negligence, gross negligence, recklessness and other liability-producing conduct, Plaintiff, Rebecca Schneider, has in the past required, continues to require, and may in the future require medical treatment and care, and has in the past, continues presently, and may in the future incur the cost of medicines, medical are, hospitalizations, treatment, future operations, testing, and rehabilitation in an attempt to alleviate and/or cure her condition(s).

      b.     As a direct and proximate result of Defendants, Amtrak's and BNSF's carelessness, negligence, gross negligence, recklessness and other liability-producing conduct, Plaintiff, Rebecca Schneider, has in the past and continues to suffer pain, disfigurement, loss of independence, mental anguish, humiliation, embarrassment, fear, loss of well-being, inability to enjoy the normal pleasures of life, and restrictions on her ability to engage in normal activities and pleasures of life, and other intangible losses.

      c.     As a direct and proximate result of Defendants, Amtrak's and BNSF's carelessness, negligence, gross negligence, recklessness and other liability-producing conduct, Plaintiff, Rebecca Schneider, has been prevented and will be

prevented in the future from performing her usual duties, activities, occupations and avocations and has suffered a loss of earnings and a loss of earning capacity.

d.      Severe emotional distress as a result of being on scene within the zone of danger and witnessing the tragedy that killed her husband.

95.     The injuries and damages suffered and claimed by Plaintiff, individually and as the personal representative of the Estate of Zach Schneider, were caused solely by the acts of Defendant Amtrak and/or Defendant BNSF, jointly and/or individually and/or through their joint and individual agents, servants, workmen and/or employees as set forth herein, and not through any act or omission on Plaintiff's part.

96.     Defendants Amtrak and BNSF are jointly and severally liable for the injuries and damages suffered by Plaintiff and the Estate of Zach Schneider.

**CLAIMS ALLEGED**

**COUNT I – NEGLIGENCE**

**PLAINTIFF, REBECCA SCHNEIDER, Individually and as personal representative of the ESTATE OF ZACHARIAH SCHNEIDER v. NATIONAL RAILROAD PASSENGER CORPORATION a/k/a AMTRAK**

97.     All preceding paragraphs of this Complaint are incorporated herein by reference the same as though fully set forth herein.

98.     Defendant Amtrak was the owner, operator, maintainer, possessor, lessor, controller and/or otherwise responsible for the care, control, and operation of the Empire Builder Train 7/27 involved in this accident.

99.     As the owner and operator of Empire Builder Train 7/27, Defendant Amtrak had a duty to ensure that the train was operated safely, carefully, and competently and in such a way so

as to not endanger its passengers and had a duty to hire, train and/or retain competent personnel to operate its locomotives, including the locomotive involved in this accident.

100.    Amtrak had a duty to ensure that all rail lines on which its trains traveled were in good and safe condition and would not pose a danger or hazard to the passengers on Amtrak's trains, especially on the Empire Builder line where an Amtrak train had previously derailed in Montana on the exact same rail line.

101.    Amtrak had a duty to ensure that Empire Builder Train 7/27 was properly inspected and maintained in good and safe condition and was capable of safely completing its journey without endangering the passengers aboard.

102.    Amtrak had a duty to ensure that Empire Builder Train 7/27 was adequately crashworthy and capable of protecting its passengers in the event of a derailment or crash.

103.    Amtrak owed its passengers, including Plaintiff and Zach Schneider, the highest duty of care under the law to ensure their safety during their travels.

104.    Amtrak had a duty to ensure that a neutral rail temperature was maintained for the rails on which the Empire Builder Train was traveling in order to prevent track buckling and to enact policies and procedures designed to ensure that a neutral rail temperature was maintained.

105.    Amtrak had a duty to monitor the rail conditions on tracks that it was operating the Empire Builder Train.

106.    Amtrak had a duty to prevent its trains, including the Empire Builder Train, from traveling over any rails for which a neutral rail temperature was not maintained and confirmed due to the risk of track buckling.

107.    The operator of Amtrak Empire Builder Train 7/27 had a duty to observe the condition of the rails on which he was operating the train, including the duty to observe and

respond appropriately to track buckling, and to ensure that he did not operate the train on any damaged or dangerous tracks or tracks that had buckled.

108. The 1988 derailment of the Empire Builder train on the same portion of tracks in Montana was caused by track buckling.

109. Knowing that track buckling was a risk and could and indeed did occur on this very stretch of tracks in Montana, Amtrak had a duty to enact and enforce policies and procedures to prevent track buckling or, at a minimum, ensure that no trains were operated on tracks that were buckled and dangerous.

110. Plaintiff, Zach Schneider, and other passengers on Empire Builder Train 7/27 trusted Amtrak with their lives as they rode as passengers on the train with no ability to control the operation themselves or prevent this catastrophic derailment.

111. Defendant Amtrak breached these aforementioned duties and as a result, caused this derailment and the injuries and damages alleged herein.

112. Amtrak, by and through its employees and/or agents, caused the injuries and damages sustained by Plaintiff and acted carelessly, negligently, grossly negligently, recklessly, and outrageously through the following actions and/or inactions:

     a.    Operating the Empire Builder Train too fast for the conditions then and there existing;

     b.    Failing to slow down as the Empire Builder Train approached the East Buelow track switch;

     c.    Failing to appreciate the damaged and/or dangerous condition of the tracks approaching the East Buelow track switch;

     d.    Failing to slow down as the Empire Builder Train passed through the East Buelow track switch;

     e.    Improperly and/or unsafely traversing the area in the vicinity of the East Buelow track switch;

     f.    Failing to appreciate the damaged and/or dangerous condition of the track switch at the location of the accident;

g. Failing to properly inspect, maintain, and/or repair the tracks on which the Empire Builder Train was traveling;

h. Failing to observe, appreciate, and/or correct the hazardous conditions which caused this derailment;

i. Failing to ensure that the tracks on which the Empire Builder Train were traveling were in good and safe condition prior to the derailment;

j. Failing to ensure that the tracks on which the Empire Builder Train were traveling were in good and safe condition prior to the derailment despite knowing that there was a previous derailment on the Empire Builder rail line in Montana and despite knowing that such a failure would expose its passengers, including Plaintiff and Zach Schneider, to an unreasonable and unacceptable risk of severe injury or death;

k. Failing to discover and thereafter warn Plaintiff and Zach Schneider of the damaged and/or dangerous condition of the tracks approaching the East Buelow track switch despite knowing that such a failure would expose its passengers, including Plaintiff and Zach Schneider, to an unreasonable and unacceptable risk of severe injury or death;

l. Failing to timely perform inspections, maintenance, and/or repairs to the railroad tracks at the location of the accident;

m. Failing to safely navigate the tracks leading up to and at the location of the derailment;

n. Failing to ensure and maintain a neutral rail temperature for the tracks;

o. Failing to prevent track buckling;

p. Failing to observe and appropriately respond to track buckling;

q. Failing to monitor the rail conditions prior to the accident;

r. Failing to appropriately respond to the rail conditions prior to the accident;

s. Failing to stop the train before operating it over buckled tracks;

t. Failing to enact and enforce policies and procedures to address the known risk of track buckling on this stretch of tracks in Montana despite knowing that the Empire Builder train derailed in 1988 on this very stretch of tracks due to track buckling, and despite knowing that such a failure would expose passengers, including Plaintiff, to an unreasonable and unacceptable risk of severe injury or death;

u. Failing to adequately communicate and coordinate with Defendant BNSF regarding the condition of the tracks on which the Empire Builder Train was traveling;

v. Failing to adequately communicate and coordinate with Defendant BNSF regarding inspection, maintenance, and upkeep of the tracks on which the Empire Builder Train was traveling;

w.     Failing to adequately train the operator and crew of the Empire Builder Train;

x.     Hiring incompetent operators, engineers and/or crew to operate the Empire Builder Train;

y.     Failing to properly inspect the Empire Builder Train;

z.     Failing to observe, appreciate, and/or correct the hazardous condition(s) of the Empire Builder Train that caused and/or contributed to this derailment;

aa.     Failing to ensure that the Empire Builder Train was equipped with all appropriate, necessary, and adequate Positive Train Control systems;

bb.     Failing to properly inspect and appreciate the conditions of the track switch;

cc.     Failing to properly inspect, maintain, and/or repair the signal system at and/or around the location of the derailment;

dd.     Failing to have properly trained personnel inspect the condition of the Empire Builder Train's Positive Train Control systems;

ee.     Violating governmental statutes, regulations, and requirements with respect to the train and train system in question;

ff.     Allowing improperly trained, incompetent and unqualified personnel to operate the Empire Builder Train;

gg.     Failing to adequately assess the condition and position of the track switch before operating the Empire Builder Train over the track switch;

hh.     Failing to comply with Amtrak's own safety, operating, and other rules, procedures, and regulations;

ii.     Failing to adequately maintain the tracks upon which its train was traveling;

jj.     Failing to adequately inspect the tracks upon which its train was traveling;

kk.     Failing to have adequate rules and procedures in place to prevent this tragedy from occurring;

ll.     Promoting and maintaining a culture of safety ignorance and noncompliance;

mm.     Failing to comply with the rules of the Northeast Operating Rules Advisory Committee;

nn.     Failing to comply with the Rail Safety Improvement Act; and

oo.     Failing to comply with the Federal Locomotive Inspection Act.

113.    Through the actions and inactions described above, Defendant Amtrak is responsible for the death of Zach Schneider and severe and disabling injuries suffered by Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against Defendant, National Railroad Passenger Corporation a/k/a Amtrak for such damages as may be permitted pursuant to applicable law, including all compensatory and punitive damages, together with interest, costs, and attorneys' fees, and all other relief that this Court deems just and appropriate.

## COUNT II – NEGLIGENCE

### PLAINTIFF, REBECCA SCHNEIDER, Individually and as personal representative of the ESTATE OF ZACHARIAH SCHNEIDER v. BNSF RAILWAY COMPANY

114. All preceding paragraphs of this Complaint are incorporated herein by reference the same as though fully set forth herein.

115. Defendant BNSF owns the train tracks of the Empire Builder line, which originates in Chicago and terminates in Portland and Seattle.

116. Upon information and belief, Defendant BNSF owns, maintains, and operates the train tracks where the Empire Builder Train began its journey in Chicago, Illinois and throughout the entire travel route.

117. As the owner of the train tracks of the Empire Builder line, Defendant BNSF had a duty to inspect, maintain, and repair the train tracks and all associated components and equipment, including track switches and signal systems, were in good and safe condition at all times, especially where a train on the Empire Builder line had previously derailed in Montana.

118. Defendant BNSF had a duty to ensure that its train tracks were safe for use by passenger rail cars, including the Empire Builder Train.

119. Defendant BNSF had a duty to ensure that trains, including Empire Builder Train 7/27, would not be permitted to operate on tracks that were damaged, dilapidated, in need of repair, and/or were otherwise dangerous and hazardous.

120.     Defendant BNSF had a duty to notify and warn all companies operating passenger trains on its train tracks, including Amtrak and its Empire Builder Train, and all of its passengers, of any tracks that were damaged, dilapidated, in need of repair, and/or were otherwise dangerous and hazardous.

121.     Defendant BNSF had a duty to ensure that its tracks were equipped with all necessary equipment and technology, such as Positive Train Control, to ensure that the passengers aboard trains traveling the tracks would be safe and protected from derailments and accidents.

122.     Defendant BNSF had a duty to repair, maintain, correct, inspect and otherwise be responsible for the area at and/or around the East Buelow track switch.

123.     Defendant BNSF had a duty to ensure that a neutral rail temperature was maintained for the rails on which the Empire Builder Train was traveling in order to prevent track buckling and to enact policies and procedures designed to ensure that a neutral rail temperature was maintained.

124.     Defendant BNSF had a duty to monitor the rail conditions on the tracks that it owned and operated.

125.     Defendant BNSF had a duty to prevent its trains, including the Empire Builder Train, from traveling over any rails for which a neutral rail temperature was not maintained and confirmed due to the risk of track buckling.

126.     The operator of BNSF freight train that passed through the area of the accident prior to Empire Builder Train 7/27 had a duty to observe the condition of the rails on which he was operating, including the duty to observe and respond appropriately to track buckling, and to ensure trains were not thereafter operated on any damaged or dangerous tracks or tracks that had buckled.

127.     The 1988 derailment of the Empire Builder train on the same portion of tracks in Montana was caused by track buckling.

128.     Knowing that track buckling was a risk and could and indeed did occur on this very stretch of tracks in Montana, BNSF had a duty to enact and enforce policies and procedures to prevent track buckling or, at a minimum, ensure that no trains were operated on tracks that were buckled and dangerous.

129.     Defendant BNSF breached these aforementioned duties and as a result, caused this derailment and the injuries and damages alleged herein.

130.     Upon information and belief, Defendant BNSF inspected the tracks in the area of this accident on or about Thursday, September 23, 2021.

131.     Upon information and belief, during the aforementioned September 23, 2021 inspection, Defendant BNSF failed to observe, appreciate, and/or correct the hazards that resulted in this tragedy, including but not limited to track buckling.

132.     Upon information and belief, as a result of the September 23, 2021 inspection, Defendant BNSF should have made immediate repairs or taken other immediate action in response to the hazards that were or should have been observed, but failed to do so, despite knowing or being in the position to know that such a failure would expose passengers on the tracks, including Plaintiff and Zach Schneider, to an unreasonable and unacceptable risk of severe injury and/or death.

133.     Upon information and belief, approximately 80 minutes prior to this tragedy a BNSF freight train traveled through the area of the accident on the same tracks and exacerbated the dangerous condition of the tracks which caused this accident.

134.     Defendant BNSF, by and through its agents, servants and/or employees, caused the injuries and damages sustained by Plaintiff, and acted carelessly, negligently, grossly negligently and/or recklessly through the following actions and/or inactions:

     a.    Failing to provide a reasonably safe railroad track;

     b.    Allowing its railroad tracks and associated equipment and components, including track switches and signal systems, to exist in a dangerous, dilapidated, and dis-repaired condition;

     c.    Failing to properly and adequately inspect, maintain and/or repair the railroad tracks and/or track systems;

     d.    Failing to observe, appreciate, and/or correct the hazards that resulted in this tragedy;

     e.    Failing to observe, appreciate, and/or correct the hazards that resulted in this tragedy despite having the opportunity to do so just days before the accident;

     f.    Appreciating and recognizing the need for repairs to the railroad tracks at the location of this accident but failing to timely perform said repairs or ensure that no trains traveled on the tracks until such time that the repairs could be made;

     g.    Failing to have properly trained and competent personnel inspect the condition of the railroad tracks and/or track system prior to this accident;

     h.    Failing to ensure that the tracks on which the Empire Builder Train were traveling were in good and safe condition prior to the derailment;

     i.    Failing to ensure that the tracks on which the Empire Builder Train were traveling were in good and safe condition prior to the derailment despite knowing that there was a previous derailment on the Empire Builder rail line in Montana and despite knowing that such a failure would expose passengers, including Plaintiff and Zach Schneider, to an unreasonable and unacceptable risk of severe injury or death;

     j.    Failing to discover and thereafter warn Plaintiff and Zach Schneider of the damaged and/or dangerous condition of the tracks approaching the East Buelow track switch despite knowing that such a failure would expose its passengers, including Plaintiff and Zach Schneider, to an unreasonable and unacceptable risk of severe injury or death;

     k.    Failing to timely perform inspections, maintenance, and/or repairs to the railroad tracks at the location of the accident;

     l.    Failing to ensure that trains traveling on its railroad tracks, including the Empire Builder Train, could safely navigate the tracks;

     m.    Failing to ensure and maintain a neutral rail temperature for the tracks;

n.    Failing to prevent track buckling;

o.    Failing to observe and appropriately respond to track buckling;

p.    Failing to monitor the rail conditions prior to the accident;

q.    Failing to appropriately respond to the rail conditions prior to the accident;

r.    Failing to stop the train before operating it over buckled tracks;

s.    Failing to enact and enforce policies and procedures to address the known risk of track buckling on this stretch of tracks in Montana despite knowing that the Empire Builder train derailed in 1988 on this very stretch of tracks due to track buckling, and despite knowing that such a failure would expose passengers, including Plaintiff, to an unreasonable and unacceptable risk of severe injury or death

t.    Failing to adequately communicate with Defendant Amtrak regarding inspection, maintenance, and upkeep of the tracks on which the Empire Builder Train was traveling;

u.    Failing to adequately communicate and coordinate with Defendant Amtrak regarding the condition of the tracks on which the Empire Builder Train was traveling;

v.    Failing to properly and safely operate the East Buelow track switch;

w.    Failing to properly and safely operate the signal system(s) leading up to and located at the East Buelow track switch;

x.    Failing to adequately assess the condition and position of the track switch before permitting the Empire Builder Train to travel over the track switch;

y.    Failing to perform required inspections of tracks/track system/switch question;

z.    Failure to implement proper precautions to prevent the derailment;

aa.    Failing to ensure that the railroad tracks in the area of the accident were equipped with all appropriate, necessary, and adequate Positive Train Control systems and technology;

bb.    Failing to ensure that properly trained and competent personnel inspected the condition of the Positive Train Control systems and technology pertaining to the tracks at the location of the accident to ensure that such systems and technology were properly functioning;

cc.    Damaging and/or exacerbating existing damage the railroad tracks at the location of the accident through operation of its freight train(s) shortly before this accident;

dd.    Failing to observe, appreciate, and/or correct damage done to the railroad tracks at the location of the accident caused by Defendant's operation of its freight train(s) shortly before this accident;

ee. Failing to warn Amtrak and/or Plaintiff and Zach Schneider of the damage done to the railroad tracks at the location of the accident caused by Defendant's operation of its freight train(s) shortly before this accident;

ff. Failing to shut down the railroad tracks at the location of this accident before it occurred so that critical and necessary repairs could be made to the tracks;

gg. Failing to properly and safely manage and supervise its railroad operations;

hh. Promoting and maintaining a culture of safety ignorance and noncompliance;

ii. Failing to comply with the rules of the Northeast Operating Rules Advisory Committee;

jj. Failing to adequately inspect the track in the area of this tragedy;

kk. Failing to adequately maintain the track in the area of this tragedy;

ll. Failing to comply with the Rail Safety Improvement Act (RSIA); and

mm. Failing to comply with the Federal Locomotive Inspection Act.

135. Through the actions and inactions described above, Defendant BNSF is responsible for the deaths of three passengers, and catastrophic injuries to numerous others, including Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against Defendant BNSF Railway Company for such damages as may be permitted pursuant to applicable law, including all compensatory and punitive damages, together with interest, costs, and attorneys' fees, and all other relief that this Court deems just and appropriate.

## COUNT III – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

## PLAINTIFF, REBECCA SCHNEIDER v. NATIONAL RAILROAD PASSENGER CORPORATION a/k/a AMTRAK AND BNSF RAILWAY COMPANY

136. All preceding paragraphs of this Complaint are incorporated herein by reference the same as though fully set forth herein.

137. At all times relevant hereto, Plaintiff, Rebecca Schneider, was a passenger aboard Empire Builder Train 7/27 and was physically, emotionally, and psychologically injured in the derailment.

138.    At all times relevant hereto, Plaintiff, Rebecca Schneider, was the lawful wife of Zach Schneider, who was a passenger aboard Empire Builder Train 7/27 and was tragically killed in the derailment.

139.    When the derailment occurred, not only did Plaintiff sustain the aforementioned physical, emotional, and psychological injuries as a result of her own involvement in the derailment, but she was forced to contemporaneously observe Defendants' negligence, gross negligence, carelessness, and/or recklessness, as described herein, catastrophically injure and kill her husband, Zach Schneider.

140.    Plaintiff was directly injured in the derailment and was unquestionably within the zone of danger of what killed her husband Zach.

141.    Plaintiff's own experience and the shock and horror of witnessing her husband, Zach, sustain devastating and fatal injuries as described herein as the direct and proximate result of Defendants' conduct, as aforesaid, caused Plaintiff to sustain severe emotional and psychological injuries, the full extent of which have yet to be realized.

142.    It was foreseeable to Defendants that their negligence, gross negligence, carelessness, and/or recklessness would result in severe emotional and psychological trauma and distress to Plaintiff, who was a passenger aboard Empire Builder Train 7/27, as well as by virtue of her relationship to Zach Schneider upon her contemporaneous observation of the accident and fatal injuries to Zach.

**WHEREFORE**, Plaintiff demands judgment against Defendants, National Railroad Passenger Corporation a/k/a Amtrak and BNSF Railway Company for such damages as may be permitted pursuant to applicable law, including all compensatory and punitive damages, together

with interest, costs, and attorneys' fees, and all other relief that this Court deems just and appropriate.

## COUNT IV – WRONGFUL DEATH

### PLAINTIFF, REBECCA SCHNEIDER, Individually and as personal representative of the ESTATE OF ZACHARIAH SCHNEIDER v. NATIONAL RAILROAD PASSENGER CORPORATION a/k/a AMTRAK AND BNSF RAILWAY COMPANY

143.    All preceding paragraphs of this Complaint are incorporated herein by reference the same as though fully set forth herein.

144.    As a direct and proximate result of Defendants' negligence, gross negligence, carelessness, recklessness, and/or other liability producing conduct, Zach Schneider was tragically killed in the derailment of Empire Builder Train 7/27.

145.    Zach is survived by his wife, Plaintiff, Rebecca Schneider, and by his parents and half-sibling.

146.    Plaintiff brings this claim pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1, *et seq.* and claims all benefits and recoverable damages under the Illinois Wrongful Death Act on behalf of all other persons entitled to recover under law.

147.    By reason of the death of Zach Schneider, caused by the aforementioned negligence, gross negligence, carelessness, and/or recklessness of Defendants, his beneficiaries have in the past and will in the future continue to suffer great pecuniary and intangible losses, including but not limited to, loss of financial and emotional support, loss of aid, loss of services, loss of companionship, loss of consortium and comfort, loss of counseling and loss of guidance and tutelage.

148.    By reason of the death of Zach Schneider, caused by the aforementioned negligence, gross negligence, carelessness, and/or recklessness of Defendants, his beneficiaries

have in the past and will in the future continue to suffer unfathomable grief and emotional and psychological pain.

149.    By reason of the death of Zach Schneider, caused by the aforementioned negligence, gross negligence, carelessness, and/or recklessness of Defendants, his beneficiaries have suffered the loss of future earnings and wages that would have been earned by Zach Schneider from the date of his death until the time in the future that he would have lived had he not died as a result of the injuries sustained.

150.    By reason of the death of Zach Schneider, caused by the aforementioned negligence, gross negligence, carelessness, and/or recklessness of Defendants. His beneficiaries have incurred or have been caused to incur and pay large and various expenses for medical treatment, hospital care and medicine rendered to decedent until the time of his death and to incur various funeral, burial, and estate and administration expenses for which Plaintiff is entitled to compensation.

151.    In the alternative, to the extent a Court were to determine that Montana law were to apply to the damages in this litigation, Plaintiff asserts the damages recoverable in accordance with § 27-1-513, MCA and brings this action to recover the same.

**WHEREFORE**, Plaintiff demands judgment against Defendants, National Railroad Passenger Corporation a/k/a Amtrak and BNSF Railway Company for such damages as may be permitted pursuant to applicable law, including all compensatory and punitive damages, together with interest, costs, and attorneys' fees, and all other relief that this Court deems just and appropriate.

## COUNT V – SURVIVAL ACTION

**PLAINTIFF, REBECCA SCHNEIDER, Individually and as personal representative of the ESTATE OF ZACHARIAH SCHNEIDER v. NATIONAL RAILROAD PASSENGER CORPORATION a/k/a AMTRAK AND BNSF RAILWAY COMPANY**

152.    All preceding paragraphs of this Complaint are incorporated herein by reference the same as though fully set forth herein.

153.    Plaintiff brings this claim pursuant to the Illinois Survival Act, 734 ILCS 5/13-209 and 755 ILCS 5/27-6.

154.    Plaintiff claims on behalf of the Estate of Zach Schneider all damages suffered by Zach prior to his death and by his Estate by reason of his death, including but not limited to the severe and devastating injuries suffered by Zach which resulted in his death, the anxiety, horror, fear of impending death, mental disturbance, pain, suffering, and other intangible losses which Zach suffered prior to his death.

155.    Plaintiff brings this Survival Action claim on behalf of the Estate of Zach Schneider and claims all benefits and damages recoverable under the Illinois Survival Act.

156.    In the alternative, to the extent a Court were to determine that Montana law were to apply to the damages in this litigation, Plaintiff asserts the damages recoverable in accordance with § 27-1-501, MCA and brings this action to recover the same.

**WHEREFORE**, Plaintiff demands judgment against Defendants, National Railroad Passenger Corporation a/k/a Amtrak and BNSF Railway Company for such damages as may be permitted pursuant to applicable law, including all compensatory and punitive damages, together with interest, costs, and attorneys' fees, and all other relief that this Court deems just and appropriate.

Dated: September 28, 2021

Respectfully submitted,

/s/ Adam J. Levitt

Adam J. Levitt
Mark DiCello
**DICELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois 60602
Tel: (312) 214-7900
alevitt@dicellolevitt.com
madicello@dicellolevitt.com

Robert J. Mongeluzzi*
Jeffrey P. Goodman*
Samuel B. Dordick*
**SALTZ MONGELUZZI & BENDESKY P.C.**
One Liberty Place
1650 Market Street, 52nd Floor
Philadelphia, Pennsylvania 19103
Tel: (215) 496-8282
rmongeluzzi@smbb.com
jgoodman@smbb.com
sdordick@smbb.com

***Counsel for Plaintiff***

*Applications for admission *pro hac vice* to be filed.